Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Ann T. Wick
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No.: 2:23-CR-00024-TOR |
| v. | |
| KOBY DON WILLIAMS, | United States' Trial Brief |
| Defendant. | |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, Ann T. Wick, Assistant United States Attorney for the Eastern District of Washington, respectfully submits this Trial Brief.

I. PROCEDURAL HISTORY

Defendant was indicted by a federal grand jury, and trial is proceeding on one count of attempted online enticement of a minor, in violation of 18 U.S.C. § 2422(b). Jury trial is set for May 13, 2024, and expected to last three days with approximately 11 government witnesses.

The government has noticed to defense five expert witnesses. For these experts, the government has provided the underlying discovery, including their CVs,

United States' Trial Brief- 1

reports, and forensically recovered data. Defendant has not indicated an objection to the witnesses.

Defendant has indicated in open court that he is not calling any expert witnesses.

## II. FACTUAL BACKGROUND

On or about July 23, 2022, Othello Police Detective Eduardo Martinez[1], as part of an undercover law enforcement operation meant to identify individuals interested in and willing to meet with minors for sex, posted the following ad on Craigslist:

> WARNING IN MOSES (Moses Lake) WARNING!!! DONT contact "Rebecca" (fivezero9#416^%6seven28) i met up with her last night in Moses thinking she was 19. SHE IS NOT!! She is 13 year old Prostitute dont get caught up in this guys i ran as soon as i saw her. BE CAREFUL fivezero941 667twoeight

A similar ad was posted on other websites. Det. Martinez took screenshots of his posting of the Craigslist ad, including a screenshot of the final ad and a confirmation provided by Craigslist. Throughout the operation, an undercover phone number and email were used.

Less than two hours after the ad was posted on Craigslist, Detective Martinez, acting in an undercover capacity as "Rebecca," received a text message from a number listed as 509-728-8092. The sender identified themselves as "Troy" and indicated that he had gotten the number from a friend.

A chat between "Troy" – determined to be Defendant in part through phone number subscriber information, a selfie style photo "Troy" sent during the chat, Defendant's driver's license photo, and eventually Defendant showing up to an agreed location – and Det. Martinez ("Rebecca") ensued over the span of three days, from July 23, 2022, to July 26, 2022, during which Defendant and

---

[1] Martinez is now employed by the Richland Police Department.

United States' Trial Brief- 2

Det. Martinez discussed Rebecca's age – 13 years old; her rates: $500 per half hour, $800 per hour, and $2500 for overnight; Defendant's employment as a "cop;" and arrangements to meet Rebecca at a hotel. It was clear that Defendant was discussing the trade of sexual acts for money; for example, when asking Rebecca for a picture early in the chat, Defendant says he wants to see "what the product is for $2500." After Det. Martinez sends an age-regressed photo of DOC Officer Ashley Coxen, Defendant responds that he'll "pay $2500 For 24 hours Anything for my high school boy." Later he writes, "For 1800 I would really like to take a weekend, spend time with you, sex obviously." At one point, on July 24, Defendant texts that he just saw Rebecca's listing on "CL" (Craigslist).

More than once, Defendant and Rebecca discuss her age. Almost immediately, Rebecca tells Defendant she is "very young." Defendant replies that he is looking for someone "18+" but that he has "two teenage boys that are curious." When "Rebecca" says she is 13 years old, Defendant replies, "Are you real, I want to introduce you to my son." After another time Rebecca told Defendant she was 13, Defendant said he would "back of [sic] the deal" and "research the legality of setting you up with my son." This message was almost immediately followed by, "Damn your [sic] are hot though!"

Three times Defendant spoke with Officer Coxen as "Rebecca" by telephone. First, after Defendant texted, "I need a little more proof that you are real before I drops lots of $$$," Rebecca offered to call him (July 25 4:45pm). Defendant agreed and said he would pull over to wait for her call. Officer Coxen called Defendant, and they spoke for approximately four minutes. Among other things, Defendant told Officer Coxen that he wanted to have sex with her to show his son how it is done, then his son can have sex with her. At 4:54 pm, Defendant texted, "Let's talk again when you have a moment."

United States' Trial Brief- 3

The two chat further, Defendant texting Rebecca that he can't "draw heavy cash out until the bank opens in the morning," and Rebecca saying that she knows he can at least get half the cash that day, that she is "not stupid." Defendant replies, "Call me when u have a chance. We can make it work. And I'm not accusing you of being stupid." About 20 minutes later, Defendant says $2,500 is "a high end Las Vegas price" and is "curious what is being offered for 2500." Rebecca responds, "13year old go for 2500 in vegas?? i bet it would be more." Nevertheless, she says, "okay i can do 1800 if youre not wasting my time." Defendant asks where she will be the next day and, "What do I get for $1800."

Rebecca then texts, "u sound like a cop im starting to get sketched out" and "what do u think get for 1800." Defendant responds, "I am a cop. And I will loose [sic] my job by doing this, but I'm not afraid. You know if I make the transaction and proposal, that you are in the clear. These transactions are hard for a cop that's not looking to arrest anyone. . . . Cops need people like you. I know how to make the transaction safe on your part." When Rebecca questions his law enforcement status, Defendant tells her he is a cop in Yakima, offers to show her his "credentials and give you money." The two go back and forth, and Defendant texts at 6:12pm, "For 1800 I would really like to take a weekend, spend time with you, sex obviously." They continue to discuss details, including meeting in Othello, with Defendant eventually saying, "I will start with an hour with the intention of an all day or all weekend afterwards." Rebecca confirms the rate will be "800 for an hour?" Defendant responds by asking if she is a cop, but, apparently and quickly reassured, he asks, "Can I bring my brother instead of my son?" (7:21pm).

At 7:55pm, Defendant texts, "I'm a cop we have already established that. I know you are not 13. I'm still willing to have a consensual encounter and help

United States' Trial Brief- 4

you out with your future education by giving you 800-2500 for tuition. You have to understand. I have to be careful what I walk into." Rebecca replies, "ok but im 13 do u want me to lie and say im 19?"

At approximately 7:56pm, Officer Coxen called Defendant, and they spoke for approximately five minutes. She asked what was going on and why Defendant was getting upset on text. Defendant explained that he was nervous because he was a cop and was worried that he was being set up. He told Officer Coxen that she "won't go to jail because you are only 13." When asked why he was telling her he was a cop, Defendant explained that he didn't want to hide it any longer and wanted to be honest with her. He said he was nervous that he would get in trouble. Officer Coxen challenged Defendant, asking him if he was a cop, why did he want to have sex with her; Defendant responded, "cops like to have sex, too." He said he wanted to see her really bad but he is nervous. Officer Coxen asked him to text her if he changed his mind, and Defendant said, "I am not gonna change my mind about seeing you, just needed reassurance. The two then discussed meeting the next day (7/26), at 3:30 in the afternoon, before hanging up.

At 9:06pm, Defendant texts Rebecca goodnight and says, "I look forward to talking to you more tomorrow." At 10:50pm, Defendant texts, "I can't quit thinking about you. Can I book a hotel in Othello where you can check in earlier?" Rebecca did not respond until after 10am the next day.

On July 26, 11:14am, Defendant texts that he is running late and wants to know, "Do you do anal?" Rebecca says she can try, and the two discuss details of meeting that day at 4:30. When Rebecca says, "im getting room and you said 800 for an hour or do you want more?" Defendant replies, "Yes, I need verbal confirmation that you are over 18." Rebecca repeats that she is 13, and the two go back and forth. Rebecca ultimately says, "i can lie bout my age later but if ur

United States' Trial Brief- 5

not cool with it we dnt have to do it. i can get other dates." Defendant persists, trying another tack: "If you are a 13 year old t hat needs to escape a bad situation. Let me know. I can get you out. And I can do it fast. I am a Cop that can fix those things." When Rebecca says she can't keep talking to him if he is not serious, Defendant asks (2:56pm), "What hotel? What room number? I'm on the way." Rebecca tells him the Quality Inn and, later, after Defendant texts that he is in Othello at 5:39pm, she tells him room 130.

Thereafter, Defendant called room 130 of the Quality Inn. Among other things, Defendant asked Officer Coxen if someone was hurting her. She responded, "No, why?" Defendant said, "Because you are 13 and I don't know why you wanna do this with me. Maybe someone is forcing you." Officer Coxen said that was not the case, and Defendant said, "Okay, well I will be there soon. How are we gonna do this?" Officer Coxen gave directions to the room 130, explaining it was on the first floor and declining to meet Defendant in the lobby, because she didn't want the front desk people to see her." Defendant said he would "be there in a few."

When Defendant arrived at room 130, he was met by law enforcement and arrested. When arresting officers located Defendant's Homeland Security badge, Defendant volunteered, "I am – uh – a human trafficking officer." Minutes later and after being advised of and waiving his rights pursuant to *Miranda*, Defendant attempted to establish, among other things, that he was there to rescue a "minor screaming for help on Craigslist." The United States intends to offer bodyworn camera footage of Defendant's arrest as reflected in the government's filed exhibit list; the footage to be published to the jury does not include Defendant asserting his right to remain silent, and counsel for the government has cautioned witnesses against commenting on the same.

In the parking lot of the motel, Officer Martinez recovered an Apple iPhone XR from the car Defendant drove to the motel. The car was towed to an impound lot and later searched pursuant to a search warrant. Police recovered a number of items, among them two prescription bottles of pills with directions to take 1-3 tablets by mouth 20-60 minutes prior to sexual activity, and $4,075 in U.S. currency in an envelope.

On July 27, 2022, Defendant spoke with his wife, Leigh Ann Williams, by phone from the jail. A recording played, advising that the call was being recorded. Although she and Defendant spoke for longer, the government only intends to publish to the jury approximately three minutes of the call, along with a transcript of the same portion of the call, during which time Defendant made statements describing what led up to his arrest. Notably, Defendant first explained that he was working on "work lead . . . what I thought was a human trafficking lead," that he did not do a "deconfliction notice" (contrary to his interview statements earlier), that he was "gonna meet this person that I thought was being trafficked to give 'em the, what we called a, um, human trafficking hotline phone number." He also says, "They didn't have any damn money on me not a single dollar." Then he says he was "working on an investigation I told you the DEA gave me? That, that firearms case?"

Representatives from the DEA, ATF, and HSI, who were in a position to know if a "human trafficking lead" or a "firearms case" had been referred to Defendant, all confirmed that their agencies had not referred any such matter to Defendant. Those representatives are reflected on the government's filed witness list, as is Defendant's then-supervisor, Patrick Murray. As an ICE Assistant Field Office Director (now retired) and Defendant's supervisor, Mr. Murray is expected to testify to Defendant's duties and responsibilities at the time Defendant committed the charged offense, as well as to what training and instruction Defendant had received in regards to reporting suspected human trafficking.

United States' Trial Brief- 7

Digital Forensic Specialist John Schlosser, of the Spokane County Sheriff's Office, performed a forensic extraction of Defendant's iPhone XR using software programs and tools called Graykey and Cellebrite. He turned the extracted data over to FBI Special Agent Jason Bennedetti for further review and is able to confirm that the printed chat identified as government's exhibit 5 on its filed exhibit list is within the extracted phone data. The government noticed Mr. Schlosser as an expert witness.

### III. OFFENSE CHARGED

Defendant is charged with one count of attempt online enticement, in violation of 18 U.S.C. § 2422(b). Section 2422(b) criminalizes the actual or attempted persuasion, inducement, enticement, or coercion of a minor using the mail or any facility or means of interstate or foreign commerce, to engage in prostitution or any activity for which the person can be charged with a criminal offense. "To convict a defendant for attempt under § 2422 (b), the government must prove that he knowingly (1) attempted (2) to persuade, induce, entice, or coerce (3) a minor (4) to engage in prostitution [or any sexual activity for which any person can be criminally charged]." *United States v. Franklin*, 847 F. App'x 387, 390 (9th Cir. 2021) (citing *United States v. Goetzke*, 494 F.3d 1231, 1234–35 (9th Cir. 2007)). The government must show that the defendant "intended to violate the statute and took a substantial step toward completing the violation." *Goetzke*, at 1235 (internal quotation and citation omitted)

1. <u>Intent</u>

Section 2422(b) proscribes attempting to persuade, induce, entice, or coerce a minor to engage in illegal sexual activity, not attempting to engage in illegal sexual activity with the minor. *See Goetzke*, 494 F.3d at 1236. The focus of any § 2422(b) charge is therefore on the intent to persuade, entice, or coerce itself. *See id.*; *see also United States v. Dhingra*, 371 F.3d 557, 562 (9th Cir. 2004) (explaining that the focal

United States' Trial Brief- 8

point of a § 2422(b) violation is on the intent of the defendant to persuade, induce or entice, not on the actual sexual act); *United States v. Brand*, 467 F.3d 179, 202 (2nd Cir. 2006) ("A conviction under § 2422(b) requires a finding only of an attempt to entice or an intent to entice, and not an intent to perform the sexual act following the persuasion."); *Murrell*, 368 F.3d at 1286 (the underlying conduct that § 2422(b) criminalizes is the persuasion of the minor, rather than the sexual act itself); *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000) (same).

Indeed, "[w]hile it may be rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act of persuasion, they are two clearly separate and different intents." *Bailey*, 228 F.3d at 639. Thus, it is the intent to persuade, induce, entice, or coerce itself that is proscribed by the statute. *See United States v. Muentes*, 316 Fed. Appx. 921, 924 (11th Cir. 2009) (explaining that the relevant intent for purposes of proving § 2422(b) is defendant's intent to induce a minor to engage in an unlawful sexual activity rather than whether the minor was actually induced); *Brand*, 467 F.3d at 202 (holding that "[a] conviction under § 2422(b) requires a finding only of an intent to entice, not an intent to perform the sexual act following the persuasion.").

Furthermore, a minor's willingness to engage in sexual activity is irrelevant to the elements of § 2422(b). Ninth Circuit Model Jury Instruction 20.29, comment, citing *United States v. Macapagal*, 56 F.4th 742, 747 (9th Cir. 2022) (rejecting challenge to jury instruction stating "'[a] minor's willingness to engage in sexual activity . . . is irrelevant to the elements of Title 18, United States Code, Section 2422(b)'").

In *Bailey*, the Sixth Circuit upheld an attempted enticement conviction based primarily on the substance of the communications. *U.S. v. Bailey*, 228 F.3d at 640. At trial, the defendant argued that these communications were merely fantasy, pointing to the fact that no meeting or definitive plans to meet had ever taken place. *Id*.

United States' Trial Brief- 9

Despite this lack of actual or anticipated travel, the Court upheld the conviction, explaining that the contents of the communications, particularly those indicating he had been watching at least one of the minors, sufficiently evinced the defendant's intent to persuade the minors to engage in illegal sexual activity. *Id*. at 640

2. <u>Substantial step</u>

"To constitute a substantial step toward the commission of a crime, the defendant's conduct must (1) advance the criminal purpose charged, and (2) provide some verification of the existence of that purpose." *United States v. Goetzke*, 494 F.3d 1231, 1236 (9th Cir. 2007). The focus therefore is whether the defendant crossed "the line between preparation and attempt by unequivocally demonstrating that the crime will take place unless interrupted by independent circumstances." *Goetzke*, 494 F.3d at 1237. While a defendant's appearance at the prearranged meeting place can constitute a substantial step, travel is not required for a defendant to be convicted under § 2422(b). *See Goetze*, at 1237 ("We agree with the Third, Sixth, and Tenth Circuits that, when a defendant initiates conversation with a minor, describes the sexual acts that he would like to perform on the minor, and proposes a rendezvous to perform those acts, he has crossed the line toward persuading, inducing, enticing, or coercing a minor to engage in unlawful sexual activity."); *see also United States v. McCarron*, 30 F.4th 1157, 1164 (9th Cir. 2022) ("Although *Goetzke* describes but one way the Government may meet its burden of showing a 'substantial step' under § 2422(b), the upshot of that decision is clear: A defendant who, after initiating contact with a minor, 'proposes a rendezvous to perform' unlawful sexual activity has taken a 'substantial step' toward a completed crime under § 2422(b).") (internal citation omitted).

In *Goetze*, the defendant mailed letters to an actual minor he had previously met, in which the defendant flattered the minor and described sex acts he wanted to perform on the minor. *Goetze*, 494 F.3d at 1236. In affirming Goetze's conviction,

United States' Trial Brief- 10

the Ninth Circuit made clear that physical proximity or travel is not necessary to constitute a substantial step under § 2422(b). *Id*. Rather, the Court found that, where the defendant sent the child "letters replete with compliments, efforts to impress, affectionate emotion, sexual advances, and dazzling incentives to return to Montana, and proposed that [the child] return during the upcoming summer," his actions constituted a "substantial step" under § 2422(b). *Id*. In reaching its conclusion, the Ninth Circuit explained that the defendant had done more than "merely think about sexual activity with a minor or reduce his thoughts to a diary," and, therefore, upheld the conviction. *Id*.

   3. <u>Actual minor not required</u>

Convictions under § 2422(b) do not require the existence of an actual minor victim. *United States v. Meek*, 366 F.3d 705, 717 (9th Cir. 2004); *see also United States v. Eller*, 57 F.4th 1117, 1121 (9th Cir. 2023) ("The statute applies whether the minors are real or fictional . . . ."); *United States v. McCarron*, 30 F.4th 1157, 1165 (9th Cir. 2022). The defendant's belief that a minor is involved is sufficient to sustain an attempt conviction. *United States v. Cote*, 504 F.3d 682 (7th Cir. 2007). The elements are satisfied where the defendant believes the person he is persuading, inducing, enticing or coercing is a minor.

In *McCarron*, the defendant responded to a post on Craiglist authored by a special agent of the Air Force Office of Special Investigations and claiming to be "Brit," a military "brat" "stuck on base" because she could not drive. 30 F.4th at 1159. When the defendant asked Brit's age, the special agent said 13. *Id*. For weeks, the two corresponded by email, with the defendant expressing a desire to meet Brit and teach her "about everything sex one day." *Id*. at 1160. The Ninth Circuit affirmed the defendant's conviction for attempted enticement of a minor in violation of § 2422(b) and noted, "To the extent McCarron ascribes any significance to the fact

United States' Trial Brief- 11

that Brit was not actually 'a person under 18 years of age,' he is misguided." 30 F.4th at 1165 (citing *Meek*, 366 F. 3d at 717).

   4. Interstate commerce

The United States must prove that the Defendant used the mail or a facility or means of interstate or foreign commerce. 18 U.S.C. § 2422(b). However, the United States need not prove that the Defendant knew that he used a facility or means of interstate or foreign commerce, or that his actions were in or affected interstate commerce. *United States v. Feola*, 420 U.S. 671, 677 n.9 (1975) ("the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute."); *United States v. Evans*, 476 F.3d 1176, 1180 n.2 (11th Cir. 2007) (holding that § 1591 does not require knowledge of interstate commerce element).

The internet and the telephone are facilities or means of interstate commerce. *United States v. Fuller*, 77 Fed.Appx. 371, 378-79 (6th Cir. 2003). Courts repeatedly have held that the phone system is an instrumentality of interstate and foreign commerce, and as such, their use affects interstate or foreign commerce. *See, e.g., United States v. Pipkins*, 378 F.3d 1281, 1295 (11th Cir.2004) (holding that the defendant's use of phones and the Internet to facilitate their commercial sex enterprise "affected" interstate commerce even without evidence of interstate transmission).

Moreover, acts and transactions that are economic in nature "affect" interstate commerce even if individual instances of such acts and transactions have only a de minimus effect. *Gonzales v. Raich*, 545 U.S. 1, 17 (2005); *United States v. Walls*, 784 F.3d 543 (9th Cir. 2015) (holding that "any individual instance of conduct" charged under Section 1591 "need only have a de minimis effect on interstate commerce" and finding that the district court did not err when it instructed the jury that 'any act that crosses state lines is 'in' interstate commerce' and 'an act or transaction that is

United States' Trial Brief- 12

economic in nature' and "affects the flow of money in the stream of commerce to any degree 'affects' interstate commerce"). Thus, given the inherently economic nature of trafficking in persons for commercial sex, even entirely intrastate conduct constituting sex trafficking of a minor can affect interstate commerce in violation of 18 U.S.C. § 1591. *See Evans*, 476 F.3d at 1179.

In *Evans*, the court held that the defendant's trafficking in minors for commercial sex, along with his use of hotels that served interstate customers and distribution of condoms that traveled in interstate commerce, "had the capacity when considered in the aggregate with similar conduct by others, to frustrate Congress's broader regulation of interstate and foreign economic activity" and therefore "affected" interstate commerce. *Id*. at 1179-80; *United States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016) ("He communicated with [victim] by phone, text message, and Instagram; he convinced her to cross state lines on a bus; he advertised her services onBackpage.com; and he stayed with her in various hotels. Any one of these is sufficient to prove that Baston's conduct was "in commerce.""); *United States v. Daniels*, 685 F.3d 1237, 1246 (11th Cir. 2012) (cell phone, interstate bus travel); *United States v. Pipkins*, 378 F.3d 1281, 1295 (11th Cir.2004) (holding that evidence that "pimps furnished their prostitutes with condoms manufactured out of state" and used mobile phones, to communicate while coordinating business "supports a finding that the activities of the enterprise affected interstate commerce"), *vacated on other grounds*, 544 U.S. 902 (2005), *op. reinstated*, 412 F.3d 1251 (11th Cir. 2005).

## IV. EVIDENTIARY ISSUES

**A. Admissibility of the chats on Defendant's iPhone.**

The chats between Defendant and Rebecca are admissible under Federal Rule of Evidence 1002 as original exhibits. When records or data are stored "in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.'" Fed. R. Evid. 1001(3). Thus, an accurate

United States' Trial Brief- 13

copy of computer data always satisfies the best evidence rule. *See Doe v. United States*, 805 F. Supp. 1513, 1517 (D. Hawaii. 1992). *See also United States v. Lebowitz*, 676 F.3d 1000, 1009 (11th Cir. 2012) (finding printouts of Internet chat conversations between victim and defendant were admissible as originals, under best evidence rule, at defendant's trial on charges of producing child pornography and attempting to entice child to engage in unlawful sexual activity); *United States v. Simpson*, 152 F.3d 1241, 1249 (10th Cir. 1998) (sufficient authentication for a printout of the text of a chat room discussion between the defendant and an undercover detective in a child pornography case).

### B. Chain of Custody

It is not necessary that the Government establish all links in the chain of custody of an item or call all persons who were in a position to come into contact with it. *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960). Alleged gaps in a chain of custody go to the weight of the evidence rather than its admissibility. If the trial judge is satisfied that there is a reasonable probability that the article has not been changed in important aspects, he may permit its admission and his decision will not be overturned absent a clear abuse of discretion. *United States v. Lampson*, 627 F.2d, 63, 65 (7th Cir. 1980). Evidence regarding the chain of custody concerning an item of seized evidence goes to the weight as opposed to the admissibility of the evidence. *United States v. Robinson*, 967 F.2d 287, 292 (9th Cir. 1992).

### C. Business Records and Public Records

The government has provided notice to defense counsel as to its business records and public records. The government has produced all the available discovery but is awaiting additional documentation as to certain certifications.

### D. PowerPoints/Summaries for Expert Use

Rather than introduce the entire extraction of data from Defendant's cell phone, the United States will present a print out of the chat between Defendant and the

United States' Trial Brief- 14

undercover phone number contained on the phone, as well as a print out or screen shot of the call logs that correspond with phone calls between Defendant and an undercover female officer. The screenshots are detailed, where possible, in the exhibit list and copies of the exhibits have been provided to counsel.

The United States anticipates the entire chat between Defendant and the undercover chatter will be admitted and read to the jury in this case.

It is well-established that the trial Court in its discretion may allow the presentation of summary evidence to guide and assist the Jury in understanding and judging the factual controversy. *See*, Fed. R. Evid. 1006; *United States v. Skalicky*, 615 F.2d 1117, 1120-1121 (5th Cir. 1980); *United States v. Cooper*, 464 F.2d 648, 656 (10th Cir. 1972). A foundation for the admission of summary will be laid through the testimony of various witnesses, who will testify that the charts and summaries accurately reflect information contained in documents already in or to be admitted into evidence. *See United States v. Lemire*, 720 F.2d 1327, 1349 (D.C. Cir. 1983); *United States v. Pollack*, 417 F.2d 240, 241 (5th Cir. 1969).

Federal Rule of Evidence 1006 provides that "the contents of voluminous writings, recordings or photographs which cannot be conveniently examined in Court may be presented in the form of a chart, summary or calculation." The Ninth Circuit has recognized that summary evidence "can help the Jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of the multitude of witnesses." *United States v. Shirley*, 884 F. 2d 1130, 1133 (9th Cir. 1989) (quoting *Lemire*, 720 F. 2d at 1348); *see also United States v. Meyers*, 847 F. 2d 1408, 1412 (9th Cir. 1988) (approving the use of a summary witness where the sequence of events was confusing and the chart contributed to the clarity of presentation).

Although the underlying materials upon which the summary testimony is based must be "admissible," they need not be actually admitted into evidence. *Meyers*, 847

United States' Trial Brief- 15

F. 2d at 1412. The foundation for admission of such a summary is simply that the records are voluminous and that in-Court examination would be inconvenient. *United States v. Duncan*, 919 F. 2d 981, 988 (5th Cir. 1990).

### E. Audio and Video Recordings

Recorded footage of Defendant's arrest and interview was captured by body worn cameras. The United States intends to offer the footage identified by the time stamps on the government's filed exhibit list. By doing so, the United States will not publish to the jury any footage of Defendant invoking his right to remain silent.

Defendant's jail call with his wife was captured by the jail system's inmate telephone system and is admissible under Fed. R. Evid. 901(a), (b)(1), (b)(5), (b)(6), and/or (b)(10). Adams County Sheriff's Cpl. Evan Armstrong is familiar with the inmate telephone system and is prepared to provide testimony to authenticate the recording. To the extent additional authentication is necessary, witnesses such as Officer Martinez and Patrick Murray can testify to recognizing Defendant's and his wife's voice on the phone call. Additionally, Mrs. Williams identifies herself in the recorded call and addresses Defendant by name, to which he responds. Because the call was recorded, and both Defendant and his wife were advised of (and acknowledged) the recording, neither of them had an expectation of privacy in their communication during the call.

Mrs. Williams's statements in the recorded call are not being offered for the truth of the matter asserted, but for foundation and context for Defendant's statements as summarized above. *See* Fed. R. Evid. 801(c)(2); *United States v. Cooke*, 675 F.3d 1153, 1156 (8th Cir. 2012) ("out of court statements [are] not offered for their truth, but to provide context for defendant's admissions and to make them intelligible to the jury.")

## F. Expert Testimony/Opinion Testimony

In this case, the United States has provided a Notice of Experts and additional supplements to that notice. Relevant witnesses are John Schlosser, Jason Benedetti, Elijah Hayward, Jenny Banks, and Evan Armstrong. Generally, a witness who is "qualified as an expert by knowledge, skill and experience" may present expert testimony if his or her specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702; *United States v. Espinoza*, 827 F.2d 604, 612 (9th Cir. 1987). The admission of expert testimony is a matter within the sound discretion of the trial Court. *United Stated v. Kinsey*, 843 F.2d 383, 387-89 (9th Cir. 1988); *United States v. Anderson*, 813 F.2d 1450, 1458 (9th Cir. 1987); *United States v. Binder,* 769 F.2d 595, 601 (9th Cir. 1985).

An expert's opinion may be based on hearsay or facts not in evidence, where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. An expert may also provide opinion testimony even if it embraces an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704; *United States v. Fleischman*, 684 F.2d 1329, 1336 (9th Cir.), *cert. denied*, 459 U.S. 1044 (1982).

Opinion testimony by lay witnesses is admissible if it is rationally based on the perception of the witness and helpful to a clear understanding of his testimony or to the determination of a fact in issue. Fed. R. Evid. 701; *United States v. Langford*, 802 F.2d 1176, 1179 (9th Cir. 1986), *cert. denied*, 483 U.S. 1008 (1987). As noted in the United States' Notice of Experts to the defense, including supplements, the United States expects that some of the testimony noted therein may fall under opinion testimony pursuant to Fed. R. Evid. 701.

## V. DEFENSE

### A. Reciprocal discovery

Should Defendant seek to introduce any evidence subject to reciprocal

United States' Trial Brief- 17

discovery that has not yet been produced to the United States, the United States reserves the right to move to exclude it, pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure. The government specifically notes its witness list was filed consistent with the Court's case management order and then filed again contemporaneously with this pleading. The government also has not received notice of alibi, per Fed. R. Crim. P. 12.1. The United States will move exclude any witness for which the Defendant had a reciprocal discovery obligation.

**B. Defenses**

The Defendant has not given notice of any defense for which the Federal Rules of Criminal Procedure require notice. Therefore, the United States will move to bar any such defense if raised during trial.

The United States further notes that the First Amendment is not a defense, *Meek*, 366 F.3d at 721, and the government may seek a jury instruction to the same.

Dated: May 7, 2024.

                                                Vanessa R. Waldref
                                                United States Attorney

                                                *s/ Ann T. Wick*
                                                Ann T. Wick
                                                Assistant United States Attorney

# CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to defense counsel of record.

<u>*s/Ann T. Wick*</u>
Ann T. Wick
Assistant United States Attorney